Perry McCoy Smith, OSB No. 025984
mccoy@lexpan.law
Lex Pan Law
920 SW 6th Avenue, Suite 1200
Portland, Oregon 97204
(503) 799-8470
Plaintiff

Jeremy L. Bordelon, OSB No. 160789
jeremy@evergreendisability.com
Evergreen Disability Law
465 Northeast 181st Ave., No. 500
Portland, Oregon 97230
(503) 888-9331
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| PERRY MCCOY SMITH,<br>　　　Plaintiff,<br><br>　　　v.<br><br>CIGNA HEALTH & LIFE INSURANCE COMPANY,<br>　　　Defendant. | Civil No. 3:20-cv-00624<br><br>COMPLAINT FOR ERISA HEALTHCARE BENEFITS |

　　　Plaintiff, Perry McCoy Smith, makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to provide health insurance benefits due under an ERISA employee benefit plan, and for Defendant's other violations of the Employee Retirement Security Act of 1974 ("ERISA"), and Oregon Revised Statutes ("ORS") 743A.190:

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" an "employee welfare

benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq. and the subject benefit plan constitutes a "plan under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials. In this case, the plan's mandatory appeals have been exhausted or rendered futile and this matter is now properly before this court for judicial review.

3. ORS 743A.190 requires that a health benefit plan offered in the State of Oregon "must cover for a child enrolled in the plan who is under 18 years of age and who has been diagnosed with a pervasive developmental disorder all medical services, including rehabilitation services, that are medically necessary and are otherwise covered under the plan" with "pervasive developmental disorder" including, but not limited to autism spectrum disorder. *See* ORS 743A.190(2)(b).

4. Venue is proper within the District of Oregon pursuant to 29 U.S.C. § 1132(e)(2), as the district in which the breach took place. Specifically, Plaintiff resided in this district at the time Defendant failed to deliver benefits owed to him.

## PARTIES

5. Plaintiff, Perry McCoy Smith (hereinafter, "Plaintiff"), is currently and was at all times relevant to this case a resident of Portland, Multnomah County, Oregon.

6. Defendant CIGNA Health & Life Insurance Company is an insurance company domiciled in the State of Connecticut, and is authorized to transact the business of insurance in this state.

7. C T Corporation System, 780 Commercial Street Southeast, Suite 100, Salem, Oregon 97301, is the Defendant's registered agent for service of process in Oregon.

## FACTS

### COVERAGE UNDER THE PLAN

8. Plaintiff was employed by Intel Corporation ("Intel"), and enrolled in Intel's employee welfare benefit plan providing health insurance benefits from at least 2011 to December 31, 2019.

9. Intel's health insurance plan was insured by CIGNA.

10. As an employer-based group health plan, the health insurance plan is governed by ERISA.

11. CIGNA both insures and administers claims for benefits under the Plan.

12. On or about September 16, 2019, Plaintiff left the employ of Intel, but continued his participation in Intel's group health insurance plan by virtue of COBRA, 29 U.S.C. § 1161.

13. Plaintiff's continued participation in his former employer's group health insurance plan via COBRA is also subject to ERISA.

14. Plaintiff's son, P. Smith, was born in 2010. From his date of birth until December 31, 2019, Plaintiff's son was covered as a dependent under Plaintiff's insurance plan with Defendant through Intel.

15. On or about October 30, 2012, Plaintiff's son was diagnosed with autism spectrum disorder ("ASD") at the M.I.N.D. Institute at the University of California, Davis, one of the leading neurodevelopmental disorder diagnostic evaluation clinics in the United States.

16. Shortly after receiving an ASD diagnosis for Plaintiff's son, Plaintiff sought out therapies for Plaintiff's son, including but not limited to Applied Behavioral Analysis

("ABA") therapy and Speech and Language Pathology ("SLP") therapy. Plaintiff's son has received ABA and SLP therapy through various providers since at least November, 2012, and continues to do so to this day.

17. In November 2012 and continuing thereafter Plaintiff and/or Plaintiff's son's therapy providers sought and received approval from Defendant for the ABA and SLP therapy provided to Plaintiff's son. Attached as Exhibit A are representative samples of the approvals from Defendant for Plaintiff's son's therapy.

## CLAIMS MADE UNDER THE PLAN

18. Throughout the period of November, 2012 through December, 2019, during which Plaintiff's son was receiving ABA and SLP therapy and was covered under Plaintiff's health plan through Defendant via Intel, both Plaintiff's son's therapy providers and Plaintiff provided detailed itemizations of all the therapies provided to Plaintiff's son during the period of coverage through Defendant.

19. Plaintiff paid for these therapy services directly and out-of-pocket.

20. Plaintiff has sought reimbursement from Defendant for those services previously approved, covered by Plaintiff's health plan through Defendant, and rendered by Plaintiff's son's therapy providers.

21. The itemizations of therapy services for which reimbursement was sought were provided promptly by Plaintiff's son's therapy providers after delivery of services, and separately and independently by Plaintiff as a result of Defendant either not processing certain claims for therapy services, or providing incorrect or invalid bases for rejecting reimbursement for those services.

22. Attached as Exhibit B is a summary spreadsheet that was updated and provided to Defendant during the period during which reimbursement was sought, outlining the claims that had been submitted for reimbursement, but for which reimbursement had not yet been provided.

23. A much more detailed spreadsheet, not attached as an exhibit due to size, including every individual claim that was submitted during the 7+ year period of coverage by Defendant, describing the status of those claims, and seeking a response from Defendant for those claims for which reimbursement had not yet been provided was also provided to Defendant in order to specifically point out to Defendant exactly where Defendant had either never processed submitted claims, or had improperly denied submitted claims.

24. The spreadsheets were created and regularly updated by Plaintiff, and outline the status of all claims from November, 2012 through May, 2018, after which Plaintiff's son switched therapy providers.

25. The detailed spreadsheet was provided to the Defendant through its "My Patient Advocate" program.

26. The "My Patient Advocate" program was the mechanism Defendant identified to Plaintiff as providing administrative remedies for reimbursement disputes.

27. On or about May 28, 2019, Defendant informed Plaintiff it would no longer take action on the remaining unprocessed or improperly processed claims for the period of November, 2012 through May, 2018.

28. To date, for the period of November, 2012 through May, 2018, on information and belief Defendant continues to owe Plaintiff over $44,000.00 in unreimbursed claims during the period of November, 2012 through the end of May, 2018.

29. During the period June, 2018 to December 31, 2019, Plaintiff's son switched ABA and SLP providers. The ABA provider has sought reimbursement directly from Defendant, while Plaintiff has paid the SLP provider directly and sought reimbursement from Defendant.

30. On information and belief, for the period June, 2018 to December 31, 2019, Defendant have not reimbursed over $1,700.00 in ABA therapy services and approximately $1,300.00 in SLP therapy services. Exhibits C and D are summary representations of the unpaid claims for services from Plaintiff's son's ABA therapy provider (KOI) and SLP therapy provider (Dvortcsak).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

31. Throughout the period of November, 2012 to December, 31, 2019, Plaintiff, and Plaintiff's son's therapy providers, have submitted to Defendant requests for reimbursement for therapy services provided.

32. These requests have used Defendant's specific forms and mechanisms for claim submissions, and have been made promptly after services were rendered.

33. Plaintiff has, throughout the period of provision of ABA and SLP therapy services for his son, requested that Defendant promptly and completely provide reimbursement for those services, either directly to Plaintiff's son's providers, or indirectly by reimbursement to Plaintiff for payments made directly to those providers by Plaintiff.

34. On or before November 16, 2015, Plaintiff was directed to the "My Personal Champion" program of Defendant, as a mechanism to resolve the many unprocessed or incorrectly processed claims, which at the time totaled in excess of $100,000.00. A copy of the letter from CIGNA's "My Personal Champion" representative on that date is attached as Exhibit E.

35. After many months of attempting to resolve the unprocessed or incorrectly processed claims through the My Personal Champion program, Defendant advised Plaintiff to resubmit all such claims, and that Defendant would accept and process all such claims without respect to the age of the claims so submitted.

36. Plaintiff personally filled out Defendant's claim submission forms for all such unprocessed or incorrectly processed claims – numbering approximately 100 pages of claim forms – which forms were delivered by U.S. Post Office Priority Mail Express on March 30, 2017.

37. Throughout the period from April, 2017 to May, 2019, Plaintiff continued to contact the My Personal Champion program at Defendant, attempting to resolve the numerous claims resubmitted in March of 2017 and additional claims for services provided from April, 2017 to May 31, 2019.

38. The process described in the preceding paragraph resulted in a decrease in the number of unresolved claims, but there continued to be claims that were never processed – either on original submission or resubmission – or for which the bases for denial were inaccurate or improper.

39. Plaintiff continued to meet monthly with a representative of the My Personal Champion program to request information on the status of the unprocessed or incorrectly processed claims.

40. On or about May 28, 2019, Defendant informed Plaintiff that it would no longer respond to inquiries about the claims referenced in paragraph 37. Attached as Exhibit F is a letter from Defendant's "My Personal Champion" representative indicating that she was "still working" on Plaintiff's claims, despite the fact that internal e-mail communications with Plaintiff indicated that it would no longer consider or process the remaining unresolved claim payments.

41. Plaintiff communicated with Defendant's My Personal Champion representative through a dedicated e-mail portal provided by Defendant which did not allow Plaintiffs to make or preserve such communications, and which made communications that had been made more than two months previously inaccessible and unreadable by Plaintiff.

42. For the reasons stated in the preceding paragraph, Plaintiff does not have copies of written communications made with Defendant via the My Personal Champion program.

### FIRST CAUSE OF ACTION
### FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

43. Under the terms of the Plan, Defendant agreed to provide Plaintiff and his family with health insurance benefits as defined by the Plan.

44. Plaintiff presented claims for health services which were authorized and payable under the terms of the Plan.

PLAINTIFF'S COMPLAINT                8

45. Defendant failed to provide benefits due under the terms of the Plan and these denials of benefits to Plaintiff constitute breaches of the Plan.

46. The decisions to deny these benefits were wrong under the terms of the Plan.

47. The decisions to deny benefits and decision-making processes were arbitrary and capricious.

48. The decisions to deny benefits were not supported by substantial evidence in the record.

49. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide the health insurance benefits claimed, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled under the Plan.

50. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide the requested benefits, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## SECOND CAUSE OF ACTION
## FOR BREACH OF ERISA FIDUCIARY DUTIES PURSUANT TO 29 U.S.C. §§ 1132(a)(3)

50. The ERISA statute, at 29 U.S.C. 1132(a)(3), provides that a civil action may be brought by a plan participant or beneficiary to obtain appropriate equitable relief to redress violations of ERISA.

51. Plaintiff was a participant in an ERISA plan.

52. Defendant is a fiduciary for that ERISA plan.

53. Defendant acts as fiduciary for the Plan and its participants when it administers claims under the plan, and when it communicates with participants about the plan,

benefits available under the plan, and the process for pursuing claims under the plan.

54. Defendant owes fiduciary duties to Plan participants, including Plaintiff and his son.

55. The fiduciary duties Defendant owes to Plaintiff include the common law duties of loyalty and candor, which require fiduciaries to deal fairly and honestly with beneficiaries, and to provide them with information which the fiduciary knows or should know would be material to the Plaintiff's circumstances.

56. Defendant has breached its fiduciary duties owed to Plaintiff by, *inter alia*:

   a. Not allowing Plaintiff to preserve communications with Defendant relevant to unprocessed or incorrectly processed claims;

   b. Failing to process over $17,000.00 worth of claims during the time period November, 2012 to May, 2018, that were correctly and properly submitted to Defendant on numerous occasions.

   c. Denying payment on over $30,000.00 worth of claims during the time period November, 2012 to May, 2018, that were correctly and properly submitted to Defendant on numerous occasions, and for which Plaintiff on numerous occasions pointed out to Defendant the reasons why the denials were improper.

   d. Failing to process or improperly denying over $3,000.00 worth of claims during the time period June, 2018 to December, 2019.

   e. Arbitrarily cutting off Plaintiff from pursuing administrative remedies through Defendant without providing valid reason for cutting off those

remedies or explaining why Plaintiff was not entitled to reimbursement for claims to which Plaintiff was entitled to reimbursement.

57. By failing to properly and completely process all of Plaintiff's claims, and in cutting off Plaintiff from internal administrative remedies without explanation as to why, Defendant breached their fiduciary duties to Plaintiff.

58. As a result of Defendant's breach of fiduciary duties, Plaintiff was harmed in the amount of the claims referenced herein, as well as resulting costs and expenses.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff requests that this Court grant him the following relief in this case:

**On Plaintiff's First Cause of Action:**

1. A finding in favor of Plaintiff against the Defendant;

2. Damages in the amount equal to the health insurance claims presented, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. Plaintiff's reasonable attorney fees and costs; and

5. Such other relief as this court deems just and proper.

**On Plaintiff's Second Cause of Action:**

6. A finding in favor of Plaintiff against the Defendant;

7. Equitable remedies in the form of surcharge or such other form as the Court deems appropriate in the amount equal to the health insurance claims presented;

8. Equitable remedies in the form of reformation of the ERISA plan, to the extent the

plan is found not to provide benefits in conformance with ORS 743A.190;

8.  Prejudgment and postjudgment interest;

9.  Plaintiff's reasonable attorney fees and costs; and

10. Such other relief as this court deems just and proper.

Dated this 16th day of April, 2020.

                              Respectfully submitted,

                         BY:    *s/Jeremy L. Bordelon*
                                    Jeremy L. Bordelon, OSB No. 160789